IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 12-cv-00494-WYD-MJW

KATHY BOUARD,

    Plaintiff,

v.

RAMTRON INTERNATIONAL CORPORATION,

    Defendant.

_____

**ORDER**
_____

THIS MATTER is before the Court on defendant, Ramtron International Corporation's, Motion For Summary Judgment [ECF No. 21]. For the reasons stated below, the motion is DENIED.

## BACKGROUND

On February 27, 2012, plaintiff, Kathy Bouard, filed this suit against defendant, Ramtron International Corporation, alleging that Ramtron discriminated and retaliated against her in violation of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

Bouard is sensitive to certain fragrances. This sensitivity causes headaches and a loss of focus and concentration. Bouard suffered from this sensitivity while employed by Ramtron. Bouard disclosed her sensitivity to Ramtron in May 2004 and tendered Ramtron an "ADA Form: Physician's Certificate" in which Bouard's physician stated that: (1) Bouard suffered from chronic rhinitis and recurrent acute sinusitis; (2) the

rhinitis and sinusitis caused chronic headaches and sinus pain; and, (3) scented substances triggered the rhinitis and sinusitis.[1] ECF No. 27-27.  Bouard requested that Ramtron provide her with an air purifier and instruct employees to refrain from using grooming products with strong fragrances or odors.  Ramtron approved Bouard's requests.

On January 1, 2009, Ramtron promoted Bouard to Securities and Exchange Commission ("SEC") Reporting and Compliance Manager.  As a result of this promotion, Bouard moved from a cubicle into an office.  Bouard alleges that because Ramtron employees did not adhere to the revised grooming policy, she limited interaction with other employees.  Bouard also alleges that Ramtron employees ridiculed her when they became aware that the revised grooming policy came into effect because of Bouard's sensitivity.  Bouard alleges that though she advised Ramtron's Human Resources Department about such behavior, it did nothing to stop or prevent the employees' behavior.

During her performance evaluation in 2010, Bouard requested a pay raise because she recently obtained a bachelor's degree.  Ramtron declined.  In July 2010, Bouard became aware that Ramtron offered a 25% pay raise to a male co-worker who obtained his bachelor's degree.  Bouard approached her supervisor, Eric Balzer, and requested that she receive a similar pay raise.  Ramtron's Human Resources Department contacted Bouard and stated that she would receive a 7% pay raise. Bouard responded that Ramtron was treating her unfairly and that a male co-worker without a disability received a higher pay raise then her.  Bouard never received the 7%

---

[1] Merriam-Webster Dictionary defines rhinitis as "inflammation of the mucous membrane of the nose" and defines sinusitis as "inflammation of a sinus of the skull." *See Rhinitis Definition*, http://www.merriam-webster.com/dictionary/rhinitis; *sinusitis definition*, http://www.merriam-webster.com/dictionary/sinusitis.

pay raise. Instead, Balzer informed Bouard that she would receive a 3% pay raise.

On August 5, 2010, Bouard sent Balzer an email detailing her objection and frustration regarding her 3% pay raise. Bouard alleges that as a result of her email, Balzer stripped her of certain job duties and responsibilities and moved her back to a cubicle. Bouard alleges that when she returned to a cubicle, Ramtron employees continued to disregard the revised grooming policy. Bouard further alleges that because the Human Resources Department failed to remedy the situation, she attempted to enforce the grooming policy by speaking to employees.

Bouard obtained an attorney because she believed that Ramtron discriminated and retaliated against her. On December 21, 2010, Bouard's attorney sent a letter to William Staunton, Ramtron's Chief Executive Officer ("CEO"), stating that Bouard had been discriminated against on the basis of her disability, in violation of the ADA, and gender, in violation of Title VII. Bouard's attorney also stated that Ramtron violated the ADA and Title VII when it retaliated against Bouard after she complained to Ramtron about its unequal treatment. On January 15, 2011, Ramtron terminated Bouard.

Bouard filed this suit on February 27, 2012. On December 27, 2012, Ramtron filed a Motion For Summary Judgment [ECF No. 21] arguing that: (1) Bouard's ADA claims fail because she is not disabled, Ramtron never discriminated against her, and Ramtron never retaliated against her; and, (2) Bouard's Title VII claims fail because Ramtron did not discriminate against Bouard on the basis of her gender and because Ramtron terminated Bouard for breaching its confidentiality agreement, not in retaliation for Bouard complaining about unequal pay.

## ANALYSIS

### A.  Legal Standard for a Motion for Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, [the court must] 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Horizon/CMS Healthcare*, 220 F.3d at 1190. "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

"The burden of showing that no genuine issue of material fact exists is borne by the moving party." *Horizon/CMS Healthcare*, 220 F.3d at 1190. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Atl. Richfield Co.*, 226 F.3d at 1148 (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Sw. Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

**B.  Bouard's Title VII Claims**

Bouard alleges claims for gender-based wage discrimination and retaliation under Title VII.

Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  "A plaintiff who seeks to prove that an employer discriminated against him or her can use direct or circumstantial evidence." *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000) (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 620 (10th Cir. 1994)).  "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Riggs v. Airtran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (quoting *Hall v. United States DOL*, 476 F.3d 847, 855 (10th Cir. 2007)).  In other words, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002) (citation omitted).  Circumstantial evidence is evidence that "allows the jury to draw a reasonable inference that discrimination occurred." *Id.*

Bouard does not present any direct evidence of discrimination.  Therefore, her claims are analyzed under the burden shifting framework announced by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this evidentiary framework, the plaintiff must first establish a *prima facie* case of discrimination. *Sanders v. Southwestern Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008) (citing *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998)).  If the

plaintiff does so, the burden then shifts to the defendant "to give a legitimate, nondiscriminatory reason for its employment decision." *Id.* (citation omitted).  "If the employer comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).  "A plaintiff who demonstrates pretext gets over the hurdle of summary judgment." *Id.* (internal quotation marks and citation omitted).

### 1. Gender-Based Wage Discrimination

Bouard argues that Ramtron:  (1) paid her less than male employees who reported to her supervisor; and, (2) gave male employees higher raises upon promotion and receiving their bachelor's degree than it did to herself and other female employees when they became promoted or received their bachelor's degree.

In *Sprague v. Thorn Ams.*, 129 F.3d 1355 (10th Cir. 1997), the United States Court of Appeals for the Tenth Circuit analyzed a gender-based wage discrimination claim under Title VII.  The Tenth Circuit clearly and succinctly laid out the elements for such a claim and stated how the claim is analyzed under the *McDonnell Douglas* burden shifting framework.  The Tenth Circuit stated:

> "[A] female Title VII plaintiff establishes a *prima facie* case of sex discrimination by showing that she occupies a job similar to that of higher paid males." *Meeks*, 15 F.3d at 1019. "Once a *prima facie* case is established, the defendant must articulate a 'legitimate, non-discriminatory reason for the pay disparity.' This burden is 'exceedingly light'; the defendant must merely proffer non-gender based reasons, not prove them." *Id.*, (quoting *Miranda*, 975 F.2d at 1529). Once the defendant advances such a justification, the plaintiff must show that the defendant, regardless of the proffered

> reasons, intentionally discriminated against her. *Id.*; *See also Tidwell*, 989 F.2d at 409. That is, "the plaintiff must show that 'a discriminatory reason more likely than not motivated [the employer] to pay her less.'" *Meeks*, 15 F.3d at 1019 (quoting *Miranda*, 975 F.2d at 1529).[2]

129 F.3d at 1363. Thus, my analysis begins with determining whether Bouard has established a *prima facie* case of gender-based wage discrimination.

### a. Bouard's *Prima Facie* Case

#### i. Similar Job

When Bouard held the position of SEC Reporting and Compliance Manager, Eric Balzer was her supervisor. Bouard alleges in her complaint that while working under Balzer, two male managers who also reported to Balzer were paid significantly more than she. In her Opposition To Defendant's Motion For Summary Judgment [ECF No. 26], Bouard argues that five managers, three men and two women, report to Balzer and the three males are paid significantly higher salaries than the women. Under this element of Bouard's claim, the issue is whether Bouard held a similar job as her male co-employees who allegedly received significantly higher salaries than she.

Ramtron offered an exhibit [ECF No. 21-31] listing the names of all the employees who reported directly to Balzer. The document also lists the employees' job title and respective salary. However, this document does not provide an explanation of each employee's job duties. Ramtron offers a document [ECF No. 21-23] that was apparently created by Bouard herself, which lists her job responsibilities as SEC Reporting and Compliance Manager. Even if I considered that document as authoritative and not self-serving, I have no other document from which I can compare

---

[2] Though Bouard does not style her claim as "sex discrimination," the substance of her argument is the same as the plaintiff's argument in *Sprague*: the defendant employer paid males who worked similar jobs as women higher salaries than the women.

- 7 -

Bouard's job responsibilities with the males that reported to Balzer in order to determine whether Bouard and the males held similar jobs. Without that information, I cannot make a determination regarding whether Bouard and the males who directly reported to Balzer held similar jobs. While the males' job titles may provide guidance on their job responsibilities, it is inappropriate for me to opine on what I believe to be their duties merely from looking at their job titles. As such, the analysis of Bouard's gender-based wage discrimination claim ends here. Accordingly, Ramtron is not entitled to judgment as a matter of law on Bouard's gender-based wage discrimination claim and its Motion For Summary Judgment [ECF No. 21] is DENIED to the extent that Ramtron seeks dismissal of this claim.

### 2. Retaliation

Pursuant to 42 U.S.C. § 2000e-3(a), it is unlawful for an employer to retaliate against employees for opposing "any practice made an unlawful employment practice by this title [42 USCS §§ 2000e – 2000e-17], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 USCS §§ 2000e – 2000e-17]." In order to establish a *prima facie* case of retaliation, Bouard must show that: (1) she engaged in protected opposition to discrimination; (2) "a reasonable employee would have found the challenged action materially adverse;" and, (3) "a causal connection existed between the protected activity and the materially adverse action." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008)).

### a. Bouard's *Prima Facie* Case

#### i. Protected Opposition to Discrimination

"To establish that [she] was engaged in statutorily protected activity, [Bouard] must show that [she] had a reasonable, good faith belief that [she] was opposing discrimination prohibited by Title VII." *Held v. Ferrellgas, Inc.*, 505 Fed. Appx. 687, 690 (10th Cir. 2012) (citing *Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003)). Bouard does not need to establish that Ramtron discriminated against her, she "need only show that [she] had a reasonable, good faith belief that [she] was reporting conduct prohibited by Title VII." *Id.* (citing *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015-16 (10th Cir. 2004)).

"Protected opposition can range from filing formal charges to voicing informal complaints to superiors." *Hertz*, 370 F.3d at 1015 (citation omitted). "[A]n employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII." *Peterson v. Utah Dep't of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002). "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).

Bouard in engaged in three acts of protected opposition. First, she emailed Balzer on Thursday, August 5, 2010, voicing her concern over her salary. Specifically, she stated that she wanted to discuss her "salary issue" with Balzer and that she felt like she was "being treated differently from [her] co-workers." ECF No. 21-29, p. 2. Bouard also wrote that her "goal was to be treated equally." *Id.* Second, Bouard met with

Ramtron's Human Resources Manager, Diane Ratcliff, on August 9, 2010, and told Ratcliff that she had spoken with a representative from the Colorado Equal Opportunity Office regarding her pay. In a document dated August 18, 2010, Ratcliff states that Bouard told her that "she had spoken with the Colorado Equal Opportunity Office regarding her potential claim of pay discrimination." ECF No. 21-35, p. 2. Ratcliff corroborated that fact in her deposition. ECF No. 21-7, p. 11. Third, Bouard's counsel sent a letter to Ramtron's CEO, Staunton, on December 21, 2010, stating that Bouard "has been subjected to unlawful pay discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, as well as retaliation for her complaint of pay discrimination." ECF No. 21-37, p. 2.

Bouard's acts of protected opposition are sufficient to put Ramtron on notice that Bouard believed Ramtron participated in activity that violated Title VII. Bouard's belief that Ramtron violated Title VII is reasonable for two reasons. First, Bouard presents evidence that during her tenure at Ramtron, Ramtron supervisors told her that she needed to obtain her bachelor's degree to receive further promotions and pay raises. ECF Nos. 21-2, p. 5 & 21-29. However, Bouard did not receive a pay raise upon receiving her bachelor's degree. Second, Ratcliff testified in her deposition that she, Bouard, and Dawn Harmon did not receive pay raises upon promotion. ECF No. 21-7, p. 9. Thus, Bouard has established that she had a reasonable, good faith belief that she was opposing discrimination prohibited by Title VII.

### ii. Materially Adverse Employment Action

"Adverse employment action includes significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (internal quotation marks and citation omitted). In *Burlington Northern & Sante Fe Ry. v. White*, 126 S. Ct. 2405 (2006), the Supreme Court of the United States "applied a more lenient standard in analyzing the anti-retaliation provisions of Title VII." *Id.* at 1203 n.2. Subsequent to *Burlington Nothern*, "[a] challenged action may be adverse in a retaliation case if a reasonable employee would have found [it] materially adverse." *Id.* (internal quotation marks and citations omitted).[3] However, the Tenth Circuit "still [does] not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action." *Id.* at 1203 (internal quotation marks and citations omitted).

Bouard alleges that the following actions are materially adverse employment actions: (1) reassignment of duties; (2) taking away her office; (3) reducing the amount of raise she was to receive; and, (4) her termination. Termination is an adverse employment action. *Piercy*, 480 F.3d at 1203. Thus, Bouard satisfies this element.

### iii. Causal Connection

In order to establish a causal connection between the protected opposition and the adverse employment action, a plaintiff may present "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239-40 (10th Cir. 2004) (internal quotations and citation omitted). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d

---

[3] The Tenth Circuit liberally interpreted "adverse employment action" even before *Burlington Northern*. *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir. 1998) ("[I]n our retaliation cases we have liberally interpreted the phrase 'adverse employment action'").

1248, 1253 (10th Cir. 2001) (citing *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997)).

Bouard's counsel sent a letter to Ramtron's CEO, Staunton, on December 21, 2010, stating that Bouard "has been subjected to unlawful pay discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, as well as retaliation for her complaint of pay discrimination." ECF No. 21-37, p. 2.  Ramtron terminated Bouard on January 15, 2011.  Thus, Ramtron fired Bouard within 25 days of receiving the letter.  The temporal proximity between these two acts is sufficient to establish a causal connection between Bouard's protected opposition and Ramtron's adverse employment action. *See O'Neal*, 237 F.3d at 1253 (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)) ("We have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation").

Because has presented sufficient evidence to establish a *prima facie* case of retaliation, the burden now shifts to Ramtron to present a legitimate non-discriminatory reason for its adverse employment action.

### b.  Legitimate Non-Discriminatory Reason For Employment Action

Ramtron states that it terminated Bouard because she "breached confidentiality by using confidential payroll data and personnel information in an attempt to exact a salary increase from Ramtron." ECF No. 21, p. 24, ¶ 2.  Balzer testified in his deposition that Bouard inappropriately handled confidential pay information regarding Ramtron employee Doug Jones, and used Jones's salary information to leverage a pay raise. ECF No. 21-9, p. 8.  Balzer also testified that "[t]he cause for [Bouard's] termination was breach of confidential information." *Id.* at p. 16.  Ratcliff corroborates Balzer's testimony

as she testified in her deposition that Balzer told her that Bouard was fired because she breached confidentiality by "[t]aking information off of a personnel change request from another employee and using it for her benefit." ECF No. 21-7, p. 3.

Ramtron has presented a legitimate non-discriminatory reason for terminating Bouard: breach of Ramtron's confidentiality agreement. Thus, the burden shifts back to Bouard to show that Ramtron's reason for terminating her is pretexual *i.e.*, unworthy of belief.

### c. Pretext

To establish a genuine issue of material fact as to pretext, a plaintiff must demonstrate that the defendant's "'proffered non-discriminatory reason is unworthy of belief.'" *Pinkerton v. Colo. DOT*, 563 F.3d 1052, 1065 (10th Cir. 2009) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995)). "A plaintiff demonstrates pretext by producing evidence of 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005) (quoting *Morgan*, 108 F.3d at 1323). "'[T]he relevant inquiry is not whether [Ramtron's] proffered reasons were wise, fair or correct, but whether [Ramtron] honestly believed those reasons and acted in good faith upon those beliefs.'" *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004) (quoting *Bullington*, 186 F.3d at 1318).

Ramtron states that it terminated Bouard for breaching its confidentiality agreement. Bouard argues that Ramtron's treatment of her "in the months following the

alleged breach of confidentiality show that termination was never truly considered until the letter from Bouard's lawyer was received." ECF No. 26, p. 27, ¶ 1. On August 6, 2010, Staunton replied to an email sent to him by Balzer. In the email, Staunton acknowledges that Bouard "broke confidence" *i.e.*, allegedly breached Ramtron's confidentiality agreement. ECF No. 21-33, p. 2. However, Staunton did not mention terminating Bouard. Staunton replied that Bouard "should not have payroll" and agreed to give Bouard either a 3% pay raise or no raise at all. *Id.* Ratcliff testified in her deposition that Staunton and Balzer decided to terminate Bouard in August 2010. ECF No. 21-7, p. 15. Neither party presents evidence as to the exact date in August 2010 that Ramtron allegedly decided to terminate Bouard. Ramtron did not terminate Bouard until January 15, 2011, and argues that "[t]he delay in implementation of the termination decision was due to the travel schedules of Balzer and Staunton as well as leaves of absence taken by Ratcliff, Balzer, and [Bouard] during that timeframe." ECF No. 27, p. 28, ¶ 1. Ratcliff stated the same in her deposition. ECF No. 21-7, pp. 15-16. Yet in Ratcliff's August 25, 2012, email to Balzer, she recommended a 5% salary increase for Bouard. ECF No. 26-5, p. 2.

I find the following evidence pertinent to this analysis: (1) at some point in August 2010, Ramtron decided to terminate Bouard for breaching its confidentiality agreement; (2) the decision to terminate Bouard, if it indeed occurred in August 2010, had to be after August 6 because Staunton acknowledges in his August 6 email that Bouard "broke confidence" but he never indicated that Bouard should be terminated; (3) Ratcliff recommended a 5% pay raise in Bouard's salary in her August 25, 2010, email to Balzer; (4) Bouard's counsel sent Staunton a letter on December 21, 2010, stating

that Ramtron had discriminated and retaliated against Bouard in violation of Title VII; (5) Ramtron terminated Bouard on January 15, 2011, less than a month after receiving the letter from Bouard's counsel; and, (6) though Ramtron had already made the decision to terminate Bouard in August 2010, it could not implement the decision until January 15, 2011, because of either leave of absences or the travel schedules of Staunton, Balzer, Ratcliff, and Bouard.  The three most important facts that logically flow from this evidence is that:  (1) unless Ramtron decided to terminate Bouard after Ratcliff's August 25, 2010, email to Balzer, Ratcliff recommended that Ramtron give a pay raise to an employee whom Ramtron had already determined to terminate *i.e.*, Bouard; (2) it took over four months for Ramtron to implement the decision to terminate Bouard; and, (3) Ramtron coincidentally was finally able to implement its decision to terminate Bouard within 25 days of receiving the letter from Bouard's counsel.  These facts show weaknesses and inconsistencies regarding Ramtron's alleged non-retaliatory reason for terminating Bouard such that a reasonable factfinder could find such reason unworthy of belief.  Thus, Bouard has established that Ramtron's alleged non-retaliatory reason for terminating Bouard is pretexual and Ramtron is not entitled to judgment as a matter of law on Bouard's Title VII retaliation claim.  Accordingly, Ramtron's Motion For Summary Judgment [ECF No. 21] is DENIED to the extent that Ramtron seeks dismissal of Bouard's Title VII retaliation claim.

**C.  Bouard's ADA Claims**

The ADA prohibits covered employers from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and

other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Bouard alleges two claims under the ADA: (1) discrimination; and, (2) retaliation.

ADA claims such as these, where the plaintiff presents no direct evidence of discrimination, are subject to the *McDonnell Douglas* burden-shifting framework used to analyze Title VII claims. *See Morgan*, 108 F.3d at 1323 ("The *McDonnell Douglas* burden shifting analysis is appropriate in disability discrimination cases such as the present one, in which the plaintiff has no direct evidence of discrimination and the employer disclaims reliance on the plaintiff's disability for an employment decision"). Thus, for Bouard's discrimination and retaliation claims, I must first determine whether Bouard has established a *prima facie* case of discrimination under the ADA.

**1. Bouard's Discrimination Claim**

    **a. *Prima Facie* Case**

In order to establish a *prima facie* case of discrimination under the ADA, Bouard must show that she: (1) is disabled; (2) "is qualified to perform the essential functions of [her] job without reasonable accommodation;" and, (3) "suffered discrimination as a result of [her] disability." *Koessel v. Sublette County Sheriff's Dep't*, 717 F.3d 736, 743 (10th Cir. 2012).

        **i. Disabled**

In order to bring a claim under the ADA, a claimant must have a disability. The ADA defines disability as: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or, (3) "being regarded as having such an impairment . . . " 42 U.S.C. § 12102(1). With respect to an individual being regarded as having an impairment, a person meets this

requirement if "the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

In 2008, Congress passed the ADA Amendments Act of 2008 ("ADAAA"), 110 P.L. 325, 122 Stat. 3553, effective January 1, 2009, which amended certain sections of the ADA and broadened the term "disability" to make it easier for disabled person to obtain protection under the act.  Specifically, the ADAAA states that "[t]he definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." 110 P.L. 325 § 4(a)(4)(A).  Specifically, the ADAAA states that the definition of "substantially limits" applied by lower courts "has created an inappropriately high level of limitation necessary to obtain coverage under the ADA" and "whether an individual's impairment is a disability under the ADA should not demand an extensive analysis . . . " 110 P.L. 325 § 2(b)(5).  The United States Code of Federal Regulations ("CFR") further states that:

> An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.  An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.  Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 CFR 1630.2(j)(1)(ii) (emphasis added).  The CFR further states that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." *Id.* at

1630.2(j)(1)(iii).

With this background in mind, I find that genuine issues of material fact exist as to whether Bouard's sensitivity qualifies as a disability under one of three definitions of disability under the ADA. Bouard's physician certified that she requires accommodation due to her sensitivity. ECF No. 27-17. Bouard requested accommodations *i.e.*, an air purifier and a revised grooming policy which limited employee use of strong odors and fragrances in order for her to be able to concentrate on the job. Ramtron agreed. Yet, Bouard testified in her deposition that her sensitivity would not impede her ability to work and it would only affect her conditions at work. ECF No. 21-1, p. 13. Given these facts and taking into account Congress's pronouncements in the ADAAA, I find that Ramtron is not entitled to judgment as a matter of law on Bouard's ADA discrimination claim because genuine issues of material fact exist as to whether Bouard's sensitivity qualifies as a disability under the ADA. As such, I need not analyze this claim any further. Accordingly, Ramtron's Motion For Summary Judgment [ECF No. 21] is DENIED to the extent Ramtron seeks dismissal of Bouard's ADA discrimination claim.

### 2. Bouard's Retaliation Claim

Because genuine issues of material fact exist as to whether Bouard's sensitivity qualifies as a disability under the ADA, Ramtron is not entitled to judgment as a matter of law on Bouard's ADA retaliation claim as well and I need not analyze this claim. Accordingly, Ramtron's Motion For Summary Judgment [ECF No. 21] is DENIED to the extent Ramtron seeks dismissal of Bouard's ADA retaliation claim.

**CONCLUSION**

After careful consideration of the matters before this Court, it is

ORDERED that Ramtron International Corporation's Motion For Summary Judgment [ECF No. 21] is **DENIED**. In light of this order and the Final Pretrial Order [ECF No. 33], it is

FURTHER ORDERED that a **five-day jury trial shall commence on Monday, May 19, 2014, at 8:30 a.m. in Courtroom A-1002**. It is

FURTHER ORDERED that a Final Trial Preparation Conference is set for **Friday**, **April 25**, **2014**, **at 10:00 a.m. in Courtroom A-1002**.

Dated:  September 27, 2013.

BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U. S. District Judge